811 P.2d 838

**COLONIAL PENN FRANKLIN INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Paul WELCH and Lillian Welch, guardians ad litem for minor child Danny Welch, Jr., Robert Livingston and Margaret Livingston; Keith Dougherty, Sr., guardian ad litem for minor children Nikki D. Dougherty and Keith E. Dougherty, Jr., Robert Burkhardt, Denise Wolford and Daniel Willis, Defendants–Respondents.**

No. 17992.

Supreme Court of Idaho, Boise, January 1990 Term.

May 10, 1991.

Lloyd J. Walker, Twin Falls, for plaintiffs-appellants.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for plaintiff-appellant. John A. Doerr (argued).

Smith & Beeks, Twin Falls, for defendants-respondents Welch.

Hepworth, Nungester & Lezamiz, Twin Falls, for defendant-respondent Willis.

Webb, Burton, Carlson, Pederson & Webb, Twin Falls, for defendant-respondent Burkhardt.

R. Jeffrey Stoker, (argued), Twin Falls, for defendant-respondent Wolford.

BISTLINE, Justice.

Pursuant to Rule 12.1 of the Idaho Appellate Rules this Court accepted a certified question at the request of the Honorable Marion J. Callister, United States District Judge for the District of Idaho:

> Whether under Idaho Code § 49–1521(c) an insurance company in a motor vehicle liability policy may exclude from coverage any motor vehicle not owned by the named insured if such vehicle is furnished or made available to the named insured for his or her regular use.

We conclude that it was permissible, under the statutory law in effect at the time applicable to this suit,[1] for an insurance company to exclude from coverage, in a motor vehicle owner's policy of liability insurance, non-owned vehicles regularly made available for use by the insured.

This certified question arose in a declaratory judgment action to which the facts were stipulated to by the parties:

> Colonial Penn Franklin Insurance Company issued an automobile liability policy to Charlotte Welch as the named insured. The Colonial Penn policy listed a 1983 Pontiac Firebird as the only designated insured vehicle. Charlotte Welch was married to Daniel R. Welch. Daniel Welch owned a vehicle other than the 1983 Firebird and that vehicle was the only designated insured vehicle under the Viking Insurance Company policy. In addition, Daniel Welch had available for his regular use a pickup truck owned by T & W Excavating Company. This pickup truck was insured by Safeco Insurance Company.
>
> On or about December 19, 1987, Daniel R. Welch was operating the pickup truck owned by T & W Excavating Company. Charlotte Welch, Denise Wolford, Robert Burkhardt and Daniel Willis were riding in the pickup truck as passengers. While Daniel Welch was operating the pickup truck, an accident occurred fatally injuring Daniel and Charlotte Welch and also injuring passengers Denise Wolford, Robert Burkhardt and Daniel Willis. After the accident, the injured passengers and relatives of the deceased Daniel and Charlotte Welch made claims against the policies insuring Daniel Welch's private automobile, (Viking Insurance), the pickup truck owned by T & W Excavating Company (Safeco Insurance Company of America), and the Colonial Penn policy insuring Charlotte Welch's 1983 Pontiac Firebird. Safeco Insurance Company of America paid its policy limits of $300,000.00 and Viking Insurance paid its policy limits of $50,000.00. Colonial Penn has denied coverage claiming that the pickup truck involved in the accident was available to Daniel Welch for his regular use, and that such regular use

---

1. **CAVEAT:** Readers of this opinion are cautioned to take note that the laws regarding motor vehicles were amended and recodified extensively. Act of January 1, 1989, ch. 265, 1988 Sess. Laws 549–881. We consider and apply only the statutory law applicable to this suit.

voided coverage according to the terms of the policy.

Supplemental Appeal Record, 37–38. The district court's memorandum decision describes the impasse which prevented it from concluding the lawsuit:

The issue in this case is whether an insurance company like Colonial Penn has the power to exclude certain classes of non-owned automobiles in a motor vehicle liability policy issued pursuant to Idaho Code § 49–1521. The language of subsection (c) does not appear to allow the insurance company to make any exclusions for non-owned automobiles. ["Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance."] But this makes little sense in light of the fact that the insurance company can clearly write exclusions for owned automobiles. *See Dullenty v. Rocky Mountain Fire and Casualty Company*, 111 Idaho 98, 721 P.2d 198 (1986). See also Idaho Code § 49–1521(b)1. ["Such owner's policy of liability insurance.... [s]hall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; ....]

Memorandum decision, 3 (emphasis added; excerpts from I.C. § 49–1521 supplied).

The pertinent portion of the vehicle owner's insurance policy involved in this suit is entitled "Bodily Injury Liability," and states that:

We will pay all sums that anyone insured under this coverage is legally required to pay as damages for *bodily injury* or *property damage*. The injury or damage must result from the *use* of an *auto* or trailer listed on your Declarations Page or for certain persons, from the *use* of a *non-owned auto*. *Bodily injury* means injury to a person's body, sickness or disease, and death that results from

any of these.... *Use of an auto* means owning, operating, loading, unloading or maintaining it. A *non-owned auto* is one that isn't owned by or registered to *You* or anyone living in your household. It also cannot be available to *You* or to anyone living in your household for regular use.

(Emphasis in original).

With that as background, we begin by examining the applicable statutory law provisions of the Motor Vehicle Safety Responsibility Act which were in effect at the time applicable to this suit. Under I.C. § 49–233, the legislature mandated that:

[E]very owner of a motor vehicle which is registered and operated in Idaho by the owner or [by others] with his permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle or motor vehicles described therein in an amount not less than that required by § 49–1521, Idaho Code.

Idaho Code § 49–1521 separates a motor vehicle liability policy into two categories. Subsection (b) describes an *owner's policy;* the other category is described in subsection (c) as an *operator's policy:*

**49–1521. 'Motor vehicle liability policy' defined—Expressed, permitted and implied provisions.**—(a) A 'motor vehicle liability policy' as said term is used in this act shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 49–1519 or 49–1520 as proof of financial responsibility, and issued, except as otherwise provided in section 49–1520, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

(b) Such owner's policy of liability insurance.

1. Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

2. Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $10,000 because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person $20,000 because of bodily injury to or death of 2 or more persons in any one (1) accident, and $5,000 because of injury to or destruction of property of others in any one (1) accident.

(c) Such operator's policy of liability insurance *shall insure the person named as insured* therein against loss from the liability imposed upon him by law for damages *arising out of the use by him of any motor vehicle not owned by him,* within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

(Emphasis added.) Subsection (d) of I.C. § 49–1521 states the requirements which must appear in both an owner's policy and an operator's policy, hence, as to every motor vehicle liability policy, namely, the insured's name and address, the coverage afforded, the premium charged, and the limits of liability.

An owner, of course, will ordinarily own the motor vehicle which he operates (drives), but this is not so with an operator. A person who does not own the motor vehicles which he operates is relegated to purchasing an operator's policy. An operator's policy of liability insurance provides liability coverage to the purchaser as to any vehicle which he operates, provided only that it is *not* owned by him. Accordingly, a non-owner possessed of an operator's liability policy, on entering and driv-

ing any vehicle which he does not own[2] would fall under both of two coverages—the coverage of his own operator's policy, and also the coverage of the owner's policy—as to the latter provided only that permission has been expressly or implicitly extended to drive the vehicle. Not only is there nothing amiss in that regard, but to the contrary it is reflective of legislative policy which recognized the societal need for liability coverage. Moreover, the legislatively set minimum limits of coverage do not preclude the owner or operator—either or both—from purchasing greater coverage than the statutorily set minimum limits. The legislature obviously had in mind that in every instance, whenever a driver gets behind the steering wheel or handlebars of a motor vehicle and assumes the responsibility for driving it, there be in existence and in effect at least one policy of insurance providing liability coverage.

As to an *owner's policy,* I.C. § 49–1521(b)(1) mandates that the policy "designate by explicit description or by appropriate reference the motor vehicles with respect to which coverage is thereby to be granted." Subsection (b)(2) thereof provides that an *owner's policy* insure the person named therein and any other person, as insured, using such motor vehicles with the express or implied permission of the named insured, provided only that such vehicles are designated by explicit description in the policy. Sections (b)(1) and (b)(2), taken together, provide liability coverage when a designated vehicle, as described in the policy, is used by the owner or by any person who has permissive use thereof.

With the foregoing analysis of the legislature's statutory scheme regarding liability coverage at hand, it is readily apparent that I.C. § 49–1521 encompasses two distinct types of liability coverage, one for an owner, and the other for a non-owner. The latter, liability coverage for non-owners, is applicable to operators of motor vehicles who drive vehicles which they do not own. The legislature has further provided that such a liability policy issued to an operator

---

**2.** *Some* person or entity has to be the owner, and is also required to obtain liability coverage.

is personal to the named insured and attaches to his person no matter what vehicle he drives, provided, however, that his coverage does not extend to any vehicle of which he becomes the owner. The requirement then is that he purchase an *owner's policy* of liability insurance. The Colonial Penn policy issued to Charlotte Welch was *not* an operator's policy, thus making inappropriate any resort to subsection (c) of § 49–1521. The Welch policy issued by Colonial Penn is clearly an owner's policy of liability insurance, insuring the use of the 1983 Pontiac Firebird by the car's owner, Charlotte Welch. In addition, Daniel Welch and any and all persons who with permission used the Firebird would also be covered by this owner's policy.

In conclusion, the exclusion written into the owner's policy of liability insurance purchased by the Welches for the 1983 Pontiac Firebird was not unlawful, and did not contradict any of the statutory laws applicable to the policy. The case law mentioned by the district court, *Dullenty v. Rocky Mountain Fire & Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986), involved a different type of insurance coverage. The insurance issue there involved was uninsured motorist coverage, sold to Dullenty only as a supplement to his policies of liability coverage.

Judge Callister noted the apparent conflict in the provisions of I.C. § 49–1521(c) and the *Dullenty* language referred to in his memorandum decision. This Court in its opinion in *Dullenty* exhibited its confusion as to the provisions of I.C. § 49–1521. Moreover, and compounding this Court's confusion, the following erroneous reading of I.C. § 49–1521(c) was the cornerstone of this Court's opinion in *Dullenty:*

> I.C. § 49–1521 only requires that the policy designate the vehicle or vehicles which are covered and in addition '... shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages *arising out of the use by him of any motor vehicle not owned by him,....*' We interpret that statutory language to require liability coverage of the named in-

sured while he be driving any motor vehicle designated in the policy and owned by him, or any other vehicle not owned by him. It does not require liability coverage while he be operating a vehicle owned by him but not designated in the policy. Hence, an insurance carrier could, in compliance with the statute, specifically exclude coverage while the insured was driving an owned but non-designated vehicle.

*Dullenty,* 111 Idaho at 104–05, 721 P.2d at 204–05 (italics in original).

On a second analysis of the *Dullenty* rationale, necessarily done in response to Judge Callister's inquiry, it is belatedly ascertained that the language therein, albeit that it reads smoothly, is a grossly inaccurate composite recitation of the actual component paragraphs (a), (b), and (c) of I.C. § 49–1521. Unfortunately, although this Court's opinion set out the whole of I.C. § 41–2502, which had nothing to do with the underlying issue, I.C. § 49–1521 was compacted into the above amalgamated version with the result that there remained no distinguishing differences between an owner's policy of liability insurance and an operator's policy of liability insurance. That paragraph of our opinion dealt with motor vehicle insurance requirements as though there were no differences or distinctions. Moreover, and equally inexplicable, the amalgamated and compacted version was concerned with the insurance company's refusal to honor its *uninsured* motorist coverage sold to Dullenty. So viewed, even at best it amounted to no more than judicial dicta insofar as motor vehicle liability coverage is concerned, and we deem it necessary to disavow *Dullenty* and withdraw all precedential weight from *Dullenty.* Question answered. No costs or fees on this appeal.

BAKES, Chief Justice, concurring specially:

I concur in that part of the Court's opinion today which holds that an owner's policy of vehicle liability insurance may exclude from coverage non-owned vehicles

regularly available for use by the insured. I further agree that portions of our opinion in *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho 98, 721 P.2d 198 (1986), were *dicta*, and did not adequately recognize the statutory distinction in I.C. § 49–1521 between an owner's policy and an operator's policy, as does today's opinion. However, the Court's opinion in *Dullenty* did accurately analyze the uninsured motorist statutes and the uninsured motorist policy of insurance in that case, and therefore I cannot join today's opinion which "deem[s] it necessary to disavow *Dullenty* and withdraw all precedential weight from *Dullenty.*" *Dullenty* correctly interpreted the uninsured motorist statutes of the State of Idaho. Any shortcoming in the *Dullenty* opinion's analysis of 49–1521 is *dicta*, and does not affect the balance of the Court's opinion in that case.

JOHNSON, BOYLE and McDEVITT, JJ., concur.