Lera CLAMPIT and Lila Mae Montgomery as Administrators of the Estates of the Deceaseds, James Clampit, Jo Carolyn Clampit, and Jamie Jo Clampit *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

91-285                                      828 S.W.2d 593

Supreme Court of Arkansas
Opinion delivered April 6, 1992
[Rehearing denied May 4, 1992.]

*Gibson & Hashem*, by: *C.C. Gibson III*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Beverly A. Rowlett*, for appellee.

STEELE HAYS, Justice. This dispute over insurance coverage arises from a motor vehicle collision between members of the Clampit family and an underinsured motorist. The question is whether a provision of the Clampits' insurance policy excluding a vehicle owned by the Clampits but not insured under that policy violates either Ark. Code Ann. § 23-89-209 (1987) or the public policy of this state. The trial court held the exclusion valid and unambiguous. We affirm.

James Clampit and Jo Carolyn Clampit, his wife, owned two motor vehicles — a 1989 Pontiac automobile and a 1989 Dodge truck. Both vehicles were insured under separate insurance policies issued by State Farm Mutual Automobile Insurance Company. In August 1990 the Clampits and their daughter, Jamie Jo, were killed in a collision involving their 1989 Pontiac. The other motorist was underinsured.

The two Clampit policies provided underinsured motorist coverage and each policy had an "owned-but-not-insured" exclusion which precluded recovery under the respective policy for accidents in a vehicle owned by the named insured but not insured under that particular policy.

Appellants, as personal representatives of the Clampits, brought this action for wrongful deaths against the underinsured motorist and joined State Farm as a defendant, seeking to recover the limits of the underinsured motorist benefits under both State Farm policies. State Farm paid its limits under the policy issued on the Pontiac, but refused to pay any sum under the other policy covering the Dodge truck, citing the owned-but-not-insured exclusion.

State Farm moved for summary judgment based on its policy exclusion. Appellants responded asserting the exclusion was contrary to the underinsured motorist statute, Ark. Code Ann. § 23-89-209 (1987), and contrary to public policy. The trial court upheld the exclusion and granted summary judgment to State Farm. Subsequently, appellants reached a settlement with the tortfeasor and the trial court entered a final order in the case. Appellants appeal from the summary judgment.

The exclusion at issue reads as follows:

Exclusions for Underinsured

Motor Vehicle Coverage:

> There is no coverage for bodily injury to an insured while occupying a motor vehicle owned by you, your spouse or any relative if it is not insured for this coverage under this policy.

In *Crawford* v. *Emasco Ins. Co.*, 294 Ark. 569, 745 S.W.2d 132 (1988), we upheld a similar exclusion in *uninsured* motorist coverage. Only one policy was involved in *Crawford* and the exclusion resulted in no coverage for the insureds. We acknowledge that our holding in *Crawford* was a minority position, but we cited an earlier decision validating this exclusion, *Holcomb* v. *Farmers Insurance Exchange*, 254 Ark. 514, 495 S.W.2d 155 (1973), and a subsequent refusal to reconsider that view in *Lucky* v. *Equity Mutual Insurance Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976). We noted that the appellants in *Crawford* had advanced the same arguments rejected in *Holcomb*, and that the minority rule had gained wider acceptance following *Holcomb*. We thought our position sound, citing the reasoning in *Dullenty* v. *Rocky Mountain Fire & Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986), overruled on other grounds, *Colonial Penn Franklin Insurance Co.* v. *Welch*, 811 P.2d 838 (Idaho 1991):

> If an insurer is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite and unable to charge a premium therefor.

Appellants in this case suggest alternative reasons why we should change our position in *Crawford*: first, the exclusion is for *under*insured coverage rather than *un*insured coverage and, second, the minority position has lost ground since *Crawford* was decided. We find these arguments unpersuasive.

We concede the distinction between *un*insured and *under*insured coverage. Uninsured motorist coverage applies when a tortfeasor either has no insurance or has less than the amount required by law. Coverage is designed to guarantee a minimum recovery equal to that amount. *Under*insured coverage applies when the tortfeasor has at least the amount of insurance required

by law, but not enough to fully compensate the victim. This coverage is designed to provide compensation to the extent of the injury, subject to the policy limit. *See Kluiter* v. *State Farm Mutual Automobile Insurance*, 417 N.W.2d 74 (Iowa 1987).[1]

Conceiveably, there are situations where the difference between uninsured and underinsured motorist coverage could affect recovery, but we fail to see how the distinction would change the result in *Crawford*, nor does appellant suggest how it would. The reasoning in *Crawford* was not concerned with the amount or extent of coverage, but with whether *any* coverage existed under the facts and the express exclusion in that case. *See* discussion on this point, *infra.*

In *Kluiter* v. *State, supra*, the Iowa Supreme Court addressed the question of underinsurance in a case factually similar to the case at bar. The insured had four policies with the defendant insurance company, each policy covering a different vehicle owned by the insured, and each policy containing an owned-but-not insured clause. None of the four vehicles were covered under any but its own policy. The insured collided with an underinsured driver and the insurance company paid the insured the policy limits for the vehicle involved in the collision. Claims by the insured under the other policies were refused because the other policies expressly excluded other vehicles owned by the insured and the vehicle involved in the collision was not covered under the other policies. The court in *Kluiter* held the exclusions valid, relying on earlier cases interpreting uninsured exclusions, and drawing no distinction between uninsured and underinsured

---

[1] Our underinsured motorist statute, Ark. Code Ann. § 23-89-209 (1987), provides:

(a) Every insurer writing automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall provide underinsured motorist coverage to the named insured unless rejected in writing by the insured. The coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle. Underinsured motorist coverage shall be at lease equal to the limits prescribed for bodily injury or death under § 27-19-605. Coverage of the insured pursuant to the underinsured motorist coverage shall not be reduced by the tortfeasor's insurance coverage except to the extent that the injured party would receive compensation in excess of his damages.

(b) For purposes of this section, private passenger automobile liability insurance shall be defined pursuant to § 23-89-301.

motorist coverage.

The dissenting opinion characterizes the *Kluiter* case as upholding the exclusionary clause "on the sole basis of an Iowa statute. . . ." We believe that is a misconception of the opinion. While Iowa does have a statute which authorizes such exclusions, that was not the basis for the decision. The statutory authorization was merely a threshold observation and not part of the court's analysis. Rather, the *Kluiter* court looked at whether the exclusion was within that authorization, and then to whether it was violative of it or the public policy it reflected. In fact, the opinion points out previous Iowa cases where other exclusions were considered but found to be invalid because they were violative of the statute and public policy.

As to the appellant's argument that the minority view has waned, the reasoning of the Idaho court in *Dullenty, supra,* is pertinent:

> Sheer numbers of decisions of other jurisdictions one way or the other on any given question are of course not controlling on this Court, and the decisions are persuasive only as they contain analysis and reasoning which recommends itself to this Court.

> Unfortunately, few of the opinions of other courts which have addressed the issue, regardless of the result reached, contain what we perceive as any in-depth analysis or reasoning. Most of the opinions which hold that exclusionary clauses to otherwise uninsured motorist coverage are void as against a statutory public policy, merely state that as a fact, i.e., "everyone knows" that the legislature in enacting uninsured motorist statutes intended that an insured is covered when injured by an uninsured motorist in all circumstances, whether the insured be riding in the named vehicle, in an unnamed but owned vehicle, while occupying a vehicle not owned by the household, while a pedestrian, while sitting on his front porch, while riding a camel or horse, or while bounding on a pogo stick.

> On the other hand, opinions holding such exclusionary clauses to be valid most often refer to the inequity of allowing a person who insures one vehicle with an insur-

ance carrier to obtain a "free ride" by thereby obtaining coverage by that same carrier on one, two, or a fleet of vehicles upon which he has paid no premium to the carrier. Some courts upholding the validity of such exclusionary clauses opine that rewarding a plaintiff who himself is operating an uninsured vehicle is contrary to legislative policy.

In *Dullenty* there were separate carriers, whereas here both vehicles were insured by the same carrier. But that is not controlling, as explained in *Dullenty*:

> . . .a person is more likely to be occupying an owned vehicle than he is to be occupying a vehicle owned by someone else. Hence, an insurance carrier may be willing to assume risks which it perceives as relatively slight, i.e., being damaged by an uninsured motorist while occupying a non-owned vehicle, without an increase in premium. It might be unwilling to insure against a risk it perceives as substantial without an increase in premium. If an insurer is required to insure against a risk of an undesignated but owned vehicle. . .it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.

The *Dullenty* court reasoned further that if appropriate exclusions are not upheld, the substantially increased risk of an owned-but-not insured vehicle becomes a "free ride" by the insured because the insurer would be paying benefits on the second vehicle for which it received no premiums. The insurance company would in effect provide coverage up to the specified policy limits for *two* vehicles at a premium calculated for one vehicle.

The identical problem arises when the same insurance company issues both policies, only here the exposure by the insurance company is slightly different. The insurer receives a premium for two cars, but in an amount only calculated to cover the risk and policy limits for each individual car, not for the combined coverage for two cars on each policy. Consequently, the insured still benefits from a "free-ride" in the form of double coverage for each vehicle at a premium priced on single coverage.

To the same effect, *see* 8C J. Appleman, *Insurance Law and Practice* § 5078.35 and § 5106 (1981) and (Supp. 1991). The author supports the reasoning underlying *Dullenty* and our previous holdings on exclusions and criticizes the position taken in other jurisdictions. Appleman characterizes the former as "correct" and sound from a common sense and actuarial standpoint, and finds it preferable from a policy standpoint. The premium can be computed on known risks and be appropriately charged to the insured requesting the increased risk. Thus, the cost and choice is that of the insured "and that construction seems to be more than fair." J. Appleman § 5078.35 at 204.

Recently the Iowa Supreme Court cited *Kluiter* with approval and discussed its holding as follows:

> When an "owned-but-not-insured" clause comes into play, the insured has control of the vehicle and the coverage on it. If a person decides to buy a small amount of underinsured motorist coverage for it, *Kluiter* holds that the insured must live with that choice.

*See also Chaffin* v. *Kentucky Farm Bureau Insurance Co.*, 789 S.W.2d 754 (Ky. 1990); and *Veach* v. *Farmers Ins. Co.*, 460 N.W.2d 845 (Iowa 1990) (dissenting opinion). The dissent notes that *Chaffin* overrules an earlier case on which we relied in *Crawford, supra*. However, it must be noted that *Chaffin* came from a sharply divided court and the three dissenting justices take the majority to task in that the only reason for the reversal was a change in court personnel, stressing that "*the insureds paid separate premiums and were entitled to, and could reasonably expect, separate coverage, not double coverage.*" (Our emphasis.) If we were to disallow the exclusions in question, the insurance companies would have to spread the increased (and unknown) risk among all insureds, regardless of the risk or circumstances of each case, the end result being that multi-car owners would be acquiring insurance at rates subsidized by single-car owners—a result we deem neither desirable nor compatible with public policy.

A discussion of the current status of owned-but-not-insured exclusions in other jurisdictions is found in *Nationwide Mutual Insurance Co.* v. *Hampton*, 935 F.2d 578 (3rd Cir. 1991). In upholding an exclusion, the *Hampton* court points out the motor

vehicle responsibility and insurance act under consideration was designed not only to insure compensation for all victims, but to address the rising consumer cost of automobile insurance "created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. . . . We discern no legislative intent to prohibit insurance companies from furthering this purpose by placing *reasonable restrictions* in their own policies." (Our emphasis.) In *Herrick* v. *Liberty Mutual Fire Insurance Co.*, 274 N.W.2d 147, 202 Neb. 116 (1979), the court stated there was not an overriding public policy discernible in uninsured motorist statutes that would protect an individual with "unreasonable expectations" of his insurance coverage. In *Perrell* v. *Columbia*, 306 U.S. 533 (1991), the court noted in an analogous setting that public policy would protect an innocent third party where it would not protect an insured.

■ Here, we conclude that the exclusion in this case is reasonable. It excludes a material, unassumed risk for which the insurance company could be expected to charge a higher premium, and it would be unfair to ask other insureds to share the cost of the increased exposure. We believe this rationale to be sound and we find no basis to change a position that has been in place since *Holcomb* v. *Farmers Insurance Exchange, supra*, was decided almost twenty years ago. The legislature has met several times since then and twice since our more recent holding in *Crawford* and has taken no action to overturn or modify the rule established in those cases. Further, when the legislature passed the underinsured motorist provision in Ark. Code Ann. § 23-89-209 (1987), (the counterpart to our earlier uninsured statute) it made no change in the basic law, nor gave any indication of other than full agreement with this court's interpretation of those statutes.

As to the law in other jurisdictions, we find it to be in a transitional stage and the jurisdictions in the minority have not diminished. We find a number of cases aligned to the position we have taken: *Nationwide Mutual* v. *Hampton, supra; Union Insurance Co.* v. *Stanage*, 454 N.W.2d 736 (S.D. 1990); *Williams-Diehl* v. *State Farm*; 793 P.2d 587 (Colo. App. 1989); *Deel* v. *Sweeny*, 383 S.E.2d 92 (W.Va.1989); *Kluiter* v. *State, supra; Clark* v. *State Farm*, 743 P.2d 1227 (Utah 1987); *Dullenty* v.

*Rocky Mountain Insurance, supra*; *New Hampshire Insurance Group* v. *Harbach*, 439 So.2d 327 (Fla. 1983); *Equitable Insurance Co.* v. *Williams*, 620 S.W.2d 608 (Tex. Ct. App. 1981); *Arguello* v. *State Farm Mutual*, 599 P.2d 587 (Colo. App. 1989); *Herrick* v. *Liberty Mutual Fire Insurance, supra*; *Hill* v. *Nationwide Mutual*, 535 S.W.2d 327 (Tenn. 1976). As noted in *Nationwide, supra*, some courts have adopted the majority position only to have the legislatures enact statutes explicitly permitting these exclusion clauses.

■ As a final point, appellants insist the trial court erred in holding the exclusion was not ambiguous. We do not find that to be the case and note that almost identical language was held clear and unambiguous in *Williams-Diehl* v. *State Farm, supra*.

For the reasons stated, the judgment is affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. The majority extends the discredited reasoning of *Holcomb* v. *Farmers Ins. Exch.*, 254 Ark. 514, 495 S.W.2d 155 (1973), to deny full compensation to Arkansans who have paid multiple insurance premiums in consideration for coverage under multiple underinsured motorist provisions. More appalling is the majority's extensive reliance on *Dullenty* v. *Rocky Mountain Fire and Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986), a case in which the Idaho Supreme Court specifically reserved the stacking issue presented in this case:

> We do not speak to and specifically reserve the question in a circumstance . . . where an insured under two or more motor vehicle liability policies, each issued by the same carrier, and each of which insures a separate vehicle, and in each of which policies issued by the same carrier the insured has elected to and paid a premium for uninsured motorist coverage.

*Id.* at 106-7, 721 P.2d at 206-7. The issue answered affirmatively in *Dullenty* was whether an insurance carrier could exclude coverage under an "owned but not insured" clause when the insured elected to pursue coverage from that carrier for an incident that occurred in another owned vehicle, despite the vehicle's coverage by a *separate* carrier under a policy that

likewise provided uninsured motorist coverage. Neither *Dullenty* nor *Holcomb* and its progeny addressed the concerns that arise when an insured or her representative seeks recovery on two policies with *under*insured motorist coverage, both of which were purchased from the same carrier.

While I disagree with the results in both *Dullenty* and the *Holcomb* line of cases, two distinguishing factors in this case militate even more strongly in favor of mandating coverage. First, the Clampits paid an *additional* premium to obtain *additional* underinsured motorist coverage. This additional paid consideration eliminates any supposed prejudice to State Farm under the "free ride" theory advanced by the *Dullenty* opinion and relied upon by the majority of this court. Rather, the "stacking" rule is entirely consistent with the economics of a contractual relationship. Justice Stevens pointed this out in his concurring opinion in *Allstate Ins. Co.* v. *Hague*, 449 U.S. 302 (1981), a choice-of-law arising out of an attempt by an insured's spouse to "stack" the uninsured motorist coverage on three automobiles. "[T]he [stacking] rule is consistent with the economics of a contractual relationship in which the policyholder paid three separate premiums for insurance coverage for three automobiles, including a separate premium for each uninsured motorist coverage." *Id.* at 328 (Stevens, J., concurring).

When *underinsured* motorist coverage is at stake, the second distinguishing feature in this case, it seems particularly unfair to uphold "owned but not insured" exclusionary clauses. Underinsured motorist coverage is specifically designed to *fully* compensate the insured when the tortfeasor's coverage meets the minimum amount required by law but does not provide sufficient compensation to the insured victim. The majority concedes the distinction in underinsured and uninsured coverage, yet chooses to rely on this court's reaffirmance of *Holcomb, supra,* in *Crawford* v. *Emcasco Ins. Co.*, 294 Ark. 569, 745 S.W.2d 132 (1988). The majority's reasoning seems circular since the *Crawford* court also relied on *Dullenty, supra,* and upheld the exclusionary clause because the insurance company did not even have knowledge of the vehicle involved in the incident. The present case is distinguishable, as pointed out above, because State Farm received premiums for the very coverage it now declines to pay. As a result, "the coverage bought, paid for and

reasonably expected is illusory." *Chaffin* v. *Kentucky Farm Bureau Ins. Co.*, 789 S.W.2d 754 (Ky. 1990), (overruling *Safeco Ins. Co. of America* v. *Hubbard*, 578 S.W.2d 49 (Ky. 1979), relied on by this court in *Crawford, supra*).

· The majority also relies on *Kluiter* v. *State Farm Mut. Auto. Ins.*, 417 N.W.2d 74 (Iowa 1987). However, the Iowa Supreme Court upheld the exclusionary clause in *Kluiter* on the sole basis of an Iowa *statute* that expressly permitted insurance companies to avoid duplicate coverage. The Arkansas Legislature has not been so generous to the insurance industry, and I object to the majority's usurpation of the legislature's prerogative. *See Calvert* v. *Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 296, 697 P.2d 684, 689 (1985) ("Any gaps in uninsured motorist protection dependent on location of the insured should be sanctioned by the Legislature and not by this Court"); *State Farm Mut. Auto. Ins. Co.* v. *Hinkel*, 87 Nev. 478, 483, 488 P.2d 1151, 1154 (1971) ("[s]uch an amendment would be the prerogative and responsibility of the legislature and not the function of this court").

In sum, I believe "anti-stacking" exclusionary clauses on underinsured motorist coverage deny Arkansans policyholders their reasonable expectations of full compensation. By so denying, these exclusions violate the public policy of this state. Accordingly, I dissent.