Ann **LANGLEY**, as mother and next friend of Tamara Langley, a minor, Appellant,

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

No. 92–3071.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1993.

Decided June 14, 1993.

Robert C. Compton, El Dorado, AR, argued, for appellant.

Jacqueline Sue Glassman, St. Louis, MO, argued (Teresa Wineland, Eldorado, AR, and Jacqueline S. Glassman, St. Louis, MO, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

McMILLIAN, Circuit Judge.

Ann Langley appeals from a final order entered in the United States District Court [1]

---

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

for the Western District of Arkansas granting summary judgment for Allstate Insurance (Allstate). *Langley ex rel. Langley v. Allstate Ins. Co.*, 1992 WL 503238, No. 91-1065, slip op. at 15–17 (W.D.Ark. Sept. 21, 1992) (amended order). The district court held that the insurance policy limited the coverage for underinsured motorists to only one of the two automobiles listed on the policy and that this limitation did not violate Arkansas public policy. For reversal appellant argues that the district court erred in finding (1) Arkansas law does not prohibit anti-stacking of benefits provisions and (2) the insurance policy precludes stacking of benefits. We affirm the judgment of the district court.

## BACKGROUND

Tamara Langley was severely injured in an automobile accident on June 22, 1989. At the time of the accident, Tamara lived with her mother, appellant. Appellant had two automobiles; both were insured by Allstate under one policy. Neither car was involved in the accident. However, appellant's policy covered Tamara Langley under the underinsured provision of the policy.

Tamara Langley commenced a tort action in state court against the driver of the car in which she was riding when the accident occurred, and she settled the action, with Allstate's approval, for the limits of the driver's liability insurance coverage, $25,000.00. She then made a claim from Allstate under her mother's policy for $100,000.00 or $50,000.00 per car for underinsured benefits. Allstate, however, only paid $50,000.00 claiming that it was obligated to pay on only one insured car on the policy. Appellant, on behalf of her daughter, filed a diversity action in federal district court seeking a declaratory judgment that under the terms of her policy and Arkansas law she is allowed to "stack" or aggregate her disability coverage and, thus, is entitled to an additional $50,000.00 from Allstate or $50,000.00 for each car under the policy, for a total of $100,000.00.[2]

Allstate filed a motion for partial summary judgment, claiming that the insurance policy precluded appellant from stacking under-insured motorist benefits. The district court granted Allstate summary judgment holding that the language in the policy unambiguously limits Allstate's liability for underinsured motorists claims to one car under the policy or $50,000.00 per car and that this limitation

2. The original policy in a section entitled General provisions provides:

Combining Limits of Two or More Autos Prohibited

If you have two or more autos insured in your name and one of these autos is involved in an accident, only the coverage limits shown on the declarations page for that auto will apply. When you have two or more autos insured in your name and none of them is involved in the accident, you may choose any single auto shown on the declarations page and the coverage limits applicable to that auto will apply. The limit available for any other auto covered by the policy will not be added to the coverage for the involved or chosen auto.

The policy was later amended by Allstate. The amendments pertained to provisions for "Uninsured Motorists Insurance (Coverage SS) and Underinsured Motorists Insurance (Coverage SU)." The amendments provided in pertinent part:

If a limit of liability is shown on your declarations page for coverage SU, we will pay all damages that an insured person is legally entitled to recover from the owner or operator of an underinsured auto because of bodily injury sustained by an insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an underinsured auto.

An underinsured auto is:

A motor vehicle which has a bodily injury liability bond or bodily injury liability insurance in effect and applicable at the time of the accident but less than the applicable damages the insured person is legally entitled to recover.

Limits of Liability

1. The coverage limit shown on the declarations page for:

(a) "Each person" is the maximum we will pay for all damages arising out of bodily injury to one person in any one motor vehicle accident, including all damages sustained by anyone else as a result of that bodily injury.

2. These limits are the maximum that Allstate will pay for any one motor vehicle accident regardless of the number of:

(a) claims made;

(b) vehicles or persons shown on the declarations page; or

(c) vehicles involved in the accident.

The Uninsured Motorists Coverage limits apply to each insured motor vehicle as shown on the declarations page.

did not violate Arkansas law.[3] Slip op. at 15–17. This appeal followed.

## DISCUSSION

### I.

■ This case comes to us following the grant of summary judgment in the district court. We review a district court's grant of summary judgment de novo, *United States, ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992), and apply the same standards used by the district court. *Thelma D. by and through Delores A. v. Board of Educ.*, 934 F.2d 929, 932 (8th Cir.1991). The district court's function at the summary judgment stage and this court's on appeal is not to weigh the evidence, but to determine whether the record, when viewed in the light most favorable to the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (*Anderson*); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990).

■ To survive a motion for summary judgment, the non-moving party need only show sufficient evidence that supports a material factual dispute that would require resolution by a trier of fact. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original).

### II.

Appellant first argues that the district court erred in finding that the language of the insurance policy at issue here unambiguously precluded "stacking" of coverage under the "under-insured" provisions. Appellant contends that while there are provisions within the body of the policy that may address the issue of stacking, no single provision nor the contract as a whole is clear on whether stacking of underinsured coverage is prohibited under the policy. She argues that the language of the policy is further confused because the provisions that address stacking are not clear on whether they are referring to underinsured or uninsured motorists or both. Appellant argues that, the various provisions of both the original policy and the amendments contradict each other and that under Arkansas law, if there is an ambiguity, it must be construed against the insurer who drafted the policy. Allstate argues that the district court correctly found that the insurance policy unambiguously prohibits the stacking of underinsured benefits.

■ As a preliminary matter, we note that when federal courts are exercising diversity jurisdiction, the rules for construing insurance policies are controlled by state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 72–73, 58 S.Ct. 817, 819–20, 82 L.Ed. 1188 (1938); *Interco Inc. v. National Sur. Corp.*, 900 F.2d 1264, 1266 (8th Cir.1990). Under Arkansas law whether an insurance policy or provision is ambiguous is a question of law which the court decides, not the fact-finder. *See C & A Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302, 303 (1974); *Gilstrap v. Jackson*, 269 Ark. 876, 601 S.W.2d 270, 271 (Ct.App.1980); *Pizza Hut of America, Inc. v. West Gen. Ins. Co.*, 36 Ark. App. 16, 816 S.W.2d 638, 641 (1991).

■ In interpreting the language of an insurance policy or provision, words must be

---

**3.** It is not disputed by either side that Tamara Langley's damages exceeded the insurance coverage available from the tortfeasor. Furthermore, both sides agree that she is entitled to recover at least $50,000.00 from Allstate under the underinsured motorists provisions of the policy at issue. *See* slip op. at 3.

construed in their "plain, ordinary popular sense." *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689, 691 (1984). Although an ambiguity exists only if a term or provision is subject to more than one reasonable construction, *State Farm Fire & Casualty Co. v. Amos*, 32 Ark.App. 164, 798 S.W.2d 440, 441–42 (1990), and any ambiguity must be construed in favor of the insured, all efforts must be made to ascertain and give effect to the intent of the parties. *Continental Casualty Co. v. Didier*, 301 Ark. 159, 783 S.W.2d 29, 32 (1990). However, because it is hard to decipher the intent of the parties from particular words or phrases, the entire policy must be considered. *Id.* Because, although a term or provision by itself may be subject to various interpretations, an examination of the entire policy may reveal only one reasonable construction. *Pate v. United States Fidelity & Guar. Co.*, 14 Ark.App. 133, 685 S.W.2d 530, 532 (Ct.App.1985).

█ We agree with the district court's conclusion that, when read as a whole, appellant's policy unambiguously prohibited intrapolicy stacking of underinsured benefits. The provision entitled "Combining Limits" provided that when none of the insured autos under the policy is involved in the accident, as here, the insured may choose any single auto shown on the declarations page and the coverage available to that auto will apply. This provision further stated that the limits available for any other auto covered by the policy will not be added to the coverage for the chosen auto.

The "Limits of Liability" provision also unambiguously limited appellant's underinsured benefits to $50,000.00 for any one auto. This provision provides that the coverage limit for each person is the maximum that Allstate will pay for all damages arising out of bodily injury to one person in any one motor vehicle accident, which in the present case is $50,000.00. The provision further provided that the limit is the maximum Allstate will pay for any one motor vehicle accident regardless of the number of vehicles listed on the policy. Therefore, we hold that the district court correctly found that the policy unambiguously precludes stacking of benefits and limits the underinsured benefits available to the maximum of $50,000.00 for any one auto regardless of the number of vehicles listed on the policy.

## III.

█ Appellant next argues that the district court erred in finding that Arkansas law does not prohibit anti-stacking provisions. Appellant argues that she paid a different premium for each car under the policy; hence, she is entitled to collect underinsured benefits for each car. Appellant contends that under Arkansas law insurance policies must be construed liberally in favor of the insured and strictly against the insurer who drafted the document. She argues that this is specially true when the language of the insurance policies purports to limit or exclude coverage. Appellant argues that Arkansas law prohibits any anti-stacking provisions unless the intent to prohibit the aggregation of benefits is expressed in unmistakable language. Allstate does not disagree with appellant's argument; however, Allstate argues that when, as here, the language of the policy is unambiguous as to its prohibition of stacking of benefits, Arkansas law does not prohibit such provisions. We agree.

We review the district court's determination of state law de novo. *Salve Regina College v. Russell*, 499 U.S. 225, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Recently, the Arkansas Supreme Court addressed the issue of stacking of underinsured motorist coverage in *Clampit v. State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992) (*Clampit*). In *Clampit* the insureds had two cars insured under separate policies. The insureds were killed in an accident involving one of the cars. State Farm paid the policy limit applicable to the car involved in the accident; however, relying on the policy's prohibition of stacking of benefits State Farm refused to pay the policy limits applicable to the other car. The Arkansas Supreme Court upheld the policy's prohibition of stacking of benefits. *Id.* at 596–97.

Additionally, there is a long line of Arkansas decisions upholding anti-stacking provisions. *See State Farm Fire & Casualty Co. v. Amos*, 32 Ark.App. 164, 798 S.W.2d 440, 442 (1990) (*Amos*) (finding the anti-stacking

language of the policy unambiguously precluded the insured's attempt to avoid the policy's limitations); *Harris v. Southern Farm Bureau Casualty Ins. Co.*, 247 Ark. 961, 448 S.W.2d 652, 654 (1970) (giving force to insurance clause precluding stacking of benefits); *M.F.A. Mut. Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742, 744 (1968) (*Wallace*) (holding that a policy's clear and unambiguous provision precluded stacking of uninsured motorists coverage); *Travelers Ins. Co. v. Estes*, 283 Ark. 61, 670 S.W.2d 451, 452 (1984) (upholding language in the policy that "unequivocally prevents 'stacking' ... no matter how many cars are covered by the policy"); *Joshua v. Hartford Accident & Indem. Co.*, 666 F.2d 1148, 1149 n. 3 (8th Cir.1981) (concluding that a limit of liability provision would preclude stacking of benefits under Arkansas law); *Treece v. Home Ins. Co.*, 295 F.Supp. 262, 263 (E.D.Ark.1969) (applying the *Wallace* holding to preclude stacking in a case in which the insured had two policies issued by the same insurer).

Moreover, in *Clampit* the court relied on the approach to underinsured motorist coverage adopted by the supreme courts in Iowa and Idaho. 828 S.W.2d at 595.[4] *See Kromrei v. Aid Ins. Co. (Mut.)*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986) (insured not allowed to stack policies to create underinsured motorist benefit on the basis that separate premiums were paid); *Holland v. Hawkeye Secur. Ins. Co.*, 230 N.W.2d 517, 520–21 (Iowa 1975) (insured was not allowed to stack benefits merely because insured had paid separate premiums when stacking was prohibited by clear and unambiguous provision). Thus, we hold that the district court did not err in holding that Arkansas law does not prohibit unambiguous anti-stacking provisions.

Accordingly, the judgment of the district court is affirmed.

---

**4.** The court relied on *Kluiter v. State Farm Mut. Auto. Ins. Co.*, 417 N.W.2d 74 (Iowa 1987) and *Dullenty v. Rocky Mountain Fire & Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986), *overruled on other grounds by Colonial Penn Franklin Ins. Co. v. Welch*, 119 Idaho 913, 811 P.2d 838 (1991).