Ruth Ann COUCH,
Administratrix of the Estate of Jennifer Ann Green, Deceased *v.*
FARMERS INSURANCE COMPANY, INC., and
Mid-Century Insurance Company Los Angeles, California

08-389                                               289 S.W.3d 909

Supreme Court of Arkansas
Opinion delivered December 19, 2008

*Blair & Stroud,* by: *H. David Blair,* and *Johnny L. Nichols,* for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC,* by: *Stuart P. Miller* and *Lindsey K. Bell,* for appellees.

DONALD L. CORBIN, Justice. This is an appeal from an order granting summary judgment in favor of Appellees Farmers Insurance Company, Inc., and Mid-Century Insurance Company Los Angeles, California, a member of the Farmers group, in a case where Appellant Ruth Ann Couch, Administratrix of the Estate of Jennifer Ann Green, Deceased, sought recovery for underinsured-motorist (UIM) benefits under multiple policies issued by Appellees. Appellant raises three arguments on appeal, specifically that the trial court erred in finding that the other insurance provisions of the policies issued by Appellees were (1) unambiguously incorporated into the UIM endorsement; (2) not void as being in derogation of Ark. Code Ann. § 23-89-209 (Repl. 2004); and (3) not void as against public policy when applied to the UIM coverage. As this appeal presents a question of statutory interpretation, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6). We find no error and affirm.

The record reflects that on January 15, 2000, Jennifer Ann Green was killed in a single-vehicle accident, while a passenger in Jason Reams's vehicle. At the time of her death, Jennifer was a named insured on an automobile insurance policy issued by Appellee, Mid-Century. This policy provided UIM coverage in the amount of $50,000 for all claims arising out of injury to a single person. After a settlement was reached whereby Reams's insurance

carrier paid $20,000 to Appellant, Mid–Century paid benefits of $50,000, including $5,000 for a death benefit and $5,000 to cover funeral expenses, under the UIM coverage of the policy upon which Jennifer was the named insured.

Once Mid–Century paid out on Jennifer's policy, Appellant sought payment for UIM benefits under three additional policies in effect with Appellees, wherein Jennifer, as a family member of the three named insureds and a resident of the household, was an insured under those policies. Two of the policies at issue, each with $50,000 limits under the UIM coverage, were issued by Farmers: Policy No. 18146299762 and Policy No. 18146299763, with the named insureds under both policies being Joe and Ruth Ann Couch, Jennifer's stepfather and mother. The third policy, Policy No. 18150550870, also with a $50,000 limit of UIM coverage, was issued by Appellee Mid–Century and listed the named insured as Roddy Couch, Jennifer's sibling. Appellees refused to pay under the three additional policies, citing to other insurance provisions in those policies that Appellees asserted precluded Appellant from recovering under multiple policies.

Appellant filed suit, alleging that premiums had been paid for UIM coverage on each of the three policies, and because Jennifer was an insured under each of those policies, they were entitled to benefits from Farmers in the amount of $100,000, and benefits from Mid–Century in the amount of $50,000. Appellant also sought an award of statutory penalties, prejudgment interest, and all costs, including attorneys' fees. After filing an answer denying Appellant's allegations, Appellees filed a motion for summary judgment. Therein, Appellees stated that Mid–Century had paid out on the policy in which Jennifer was the named insured and that the Appellant sought to stack the UIM benefits from three additional policies, each of which contained anti-stacking provisions. Appellees asserted that because of the clear and unambiguous anti-stacking language, it was entitled to summary judgment. Thereafter, the trial court entered an order denying the motion for summary judgment.

Appellees filed a renewed and amended motion for summary judgment, again arguing that the three policies at issue each contained anti-stacking provisions that prohibited Appellant from recovering under multiple policies. After taking the motion under advisement, the circuit court entered a letter order on July 16, 2007, granting the motion for summary judgment. Therein, the circuit court acknowledged that it initially denied the motion for

summary judgment, but upon review of the amended motion, which included an argument about a specific provision within the policies regarding stacking between multiple policies issued by the same insurance company, determined that summary judgment was warranted. A written order reflecting the trial court's ruling was entered of record on September 26, 2007. This appeal followed.

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Stromwall v. Van Hoose*, 371 Ark. 267, 265 S.W.3d 93 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.* The facts here are undisputed by the parties. As there is not a genuine issue of material fact, the case was appropriately determined as a matter of law. Therefore, the issue here is whether summary judgment was granted in favor of the correct party based upon the interpretation of the law at issue.

As her first point on appeal, Appellant argues that the circuit court erred in finding that the other insurance provisions of the policies were unambiguously incorporated in the UIM coverage endorsement. Specifically, Appellant asserts that the anti-stacking language contained in the UIM section is limited to intra-policy stacking and is thus inapplicable in this case. Appellant further argues that if the applicability of the other insurance clause is ambiguous, any ambiguity must be resolved in favor of the insured. Appellees counter that the anti-stacking provision is clear and unambiguous. We agree with Appellees.

When presented with an issue regarding interpretation of a contract, this court has stated:

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of

the words used by the parties as they are taken and understood in their plain and ordinary meaning. "The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it." It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases, but from the whole context of the agreement.

*Health Resources of Ark., Inc. v. Flener,* 374 Ark. 208, 211, 286 S.W.3d 704, 706-07 (2008) (citations omitted).

In granting summary judgment, the circuit court held that each of the four insurance policies at issue contained clear and unambiguous anti-stacking language that applied to the UIM coverage. Specifically, the court stated that the anti-stacking language appeared "to be applied by reference to the Under-Insured Motorists Endorsement and by its terms it unambiguously provides that the policy limits of the four policies in this case cannot be stacked." We now turn to the policy provisions at issue.

In one of the insurance policies[1] issued by Farmers on behalf of the named insureds, Joe Couch and Ruth Ann Couch, the following language is found:

*PART II — UNINSURED MOTORISTS*

*Coverage C — Uninsured Motorist Coverage*

*(Including Underinsured Motorist Coverage)*

. . . .

*Other Insurance*

. . . .

4. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

---

[1] Each of the policies at issue here contain the exact same language.

The following language is found in the endorsement for Underinsured-Motorist Coverage:

> Under Part II of the policy the provisions that apply to Exclusions, Limits of Liability, Other Insurance and Arbitration remain the same and apply to this endorsement except where stated otherwise in this endorsement.

> This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

■ Considering our rules of contract interpretation and giving the language employed the meaning the parties intended, we cannot say that the trial court erred in finding that the anti-stacking language clearly and unambiguously applied to the UIM coverage. Nothing in the insurance contracts demonstrates the existence of an ambiguity involving intra-policy stacking versus inter-policy stacking, as Appellant suggests. The language cited by Appellant, "[o]ur maximum liability under the UNDER-Insured Motorist Coverage is the limits of the UNDERInsured Motorist Coverage stated in this policy," is not in conflict with the other insurance clause and simply sets forth the limits for liability under that particular policy. Accordingly, there is no merit to Appellant's argument that there was an ambiguity in the insurance contracts.

Next, Appellant argues that the trial court erred in finding that the other insurance clause when applied to UIM coverage was not void as being in derogation of section 23-89-209. In support of this argument, Appellant cites to this court's decision in *Heiss v. Aetna Casualty & Surety Co.*, 250 Ark. 474, 465 S.W.2d 699 (1971). Appellees counter that *Heiss* is inapplicable and nothing in section 23-89-209 precludes the prohibition against the stacking of policies. Appellees are correct.

We review issues of statutory construction de novo. *Ryan & Co. AR, Inc. v. Weiss*, 371 Ark. 43, 263 S.W.3d 489 (2007). It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. *Id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court

construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* We turn then to the statute at issue.

■ Section 23-89-209 sets forth the provisions for UIM coverage and provides in relevant part:

> (a)(1) No private passenger automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall be delivered or issued in this state or issued as to any private passenger automobile principally garaged in this state unless the insured has the opportunity, which he or she may reject in writing, to purchase underinsured motorist coverage.

Clearly, section 23-89-209 mandates that an insurer make UIM coverage available to an insured, but an insured is allowed to reject such coverage in writing. We fail to see, however, how the anti-stacking provisions at issue here are in derogation of this section. Simply because an insurer must offer UIM coverage does not translate to a requirement that an insurer not be allowed to prohibit the stacking of benefits. We agree with Appellees that an exclusion to coverage cannot violate public policy where an insured can opt out of UIM coverage altogether. *See Harasyn v. St. Paul Guardian Ins. Co.,* 349 Ark. 9, 75 S.W.3d 696 (2002).

Likewise, the *Heiss* decision relied on by Appellant is unavailing in this regard. In *Heiss,* 250 Ark. 474, 465 S.W.2d 699, a man was killed in a collision involving an uninsured motorist. The deceased had an insurance policy and paid separate premiums for uninsured-motorist coverage and medical payments. The insurer claimed that it was entitled to deduct the medical payments made from the $20,000 limit contained in the uninsured-motorist section of the policy. This court rejected the insurer's argument, holding that any such deduction for medical expenses was in derogation of the explicit requirements of the uninsured-motorist statute and financial responsibility laws at issue, which established limits of payment for injuries or death. To hold otherwise would have allowed the insurer to pay less than mandated by the legislature. Pursuant to section 23-89-209(a)(4), however, if an insurer issues UIM coverage, such coverage must be at least equal to the

limits prescribed for bodily injury or death in Ark. Code Ann. § 27-19-605 (Repl. 2008), and the amount paid by Farmers under Jennifer's policy exceed that statutory limit. Accordingly, our decision in *Heiss* is of no import to the present case.

Before leaving this point, we note that Appellant argues that it is unfair to allow Appellees to receive multiple premiums but only require them to pay on one policy. In support of this contention, Appellant cites to cases from other jurisdictions that have held as much. First, just as we held in *Chamberlin v. State Farm Mutual Automobile Insurance Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001), the reliance on authority from other jurisdictions is unpersuasive, particularly where this court has previously addressed the same issue. Moreover, the Couch family maintained four insurance policies on four different automobiles, and the premiums paid on those policies were calculated based on coverage for each singular vehicle. At the time the Couches contracted with Appellees to provide insurance coverage, they were aware that each of those policies contained language prohibiting the stacking of multiple policies. If we were to void the anti-stacking provisions of these contracts, Appellees would be forced to pay quadruple coverage in exchange for only one premium paid for the deceased. Accordingly, we find no merit to the contention that Appellees are gaining a windfall because it accepted multiple premiums where those premiums were calculated on coverage for a single vehicle and based on the explicit prohibition of stacking multiple policies.

As her final point on appeal, Appellant argues that the trial court erred in finding that the other insurance clause, when applied to UIM coverage, is not void as against public policy. In support of her contention, Appellant argues that the anti-stacking provision undermines the public policy favoring compensation of the person wrongfully injured or killed and that limitations on coverage are not favored. In advancing her argument, Appellant acknowledges this court's decisions in *Clampit v. State Farm Mutual Automobile Insurance Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992), and *Chamberlin*, 343 Ark. 392, 36 S.W.3d 281, but argues that those cases are distinguishable and should be limited so as to not apply to this case. Appellees counter that this court has settled the public-policy argument and that there is no reason to deviate from that precedent. We agree.

This court has held that unless the legislature has specifically prohibited exclusions, courts will not find the restrictions void as against public policy. *Harasyn*, 349 Ark. 9, 75 S.W.3d 696.

Moreover, as we previously stated, an exclusion to coverage cannot violate public policy when one considers that a driver can opt out of the coverage altogether. *Id.* While acknowledging the holding in *Harasyn*, Appellant avers that the decision should be overruled or at least limited to the facts of that case. In the absence of a compelling reason to do so, this court declines to overrule *Harasyn*. It has been said that

> [it] is necessary, as a matter of public policy, to uphold prior decisions unless great injury or injustice would result. The policy behind *stare decisis* is to lend predictability and stability to the law. In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable.

*State Auto Prop. & Cas. Ins. Co. v. Ark. Dep't of Envtl. Quality,* 370 Ark. 251, 257, 258 S.W.3d 736, 741 (2007) (quoting *Cochran v. Bentley,* 369 Ark. 159, 174, 251 S.W.3d 253, 265 (2007)).

Appellant also acknowledges this court's holdings in *Clampit* and *Chamberlin* upholding anti-stacking provisions as not being violative of public policy. Appellant contends, however, that those two cases are distinguishable and that their application should be limited. We disagree. In *Clampit,* 309 Ark. 107, 828 S.W.2d 593, a husband and wife owned two vehicles that were insured under separate policies. The couple and their daughter were killed in an automobile collision while occupants in one of the insured vehicles. The other driver was underinsured, and personal representatives of the deceased brought an action against the insurer to recover the limits of UIM benefits under both policies. The insurer refused to pay under both policies, citing an owned-but-not-insured exclusion which precluded recovery under both policies. This court held that the exclusion to UIM coverage did not violate the public policy of this state, explaining, by way of example, that if an insurer is required to insure against a risk of an undesignated-but-owned vehicle, it is required to insure against risks that it is unaware of and unable to charge a premium for. The court further reasoned:

> If we were to disallow the exclusions in question, the insurance companies would have to spread the increased (and unknown) risk

among all insureds, regardless of the risk or circumstances of each case, the end result being that multi-car owners would be acquiring insurance at rates subsidized by single-car owners — a result we deem neither desirable nor compatible with public policy.

*Id.* at 113, 828 S.W.2d at 597.

Following *Clampit*, this court again addressed the issue of stacking in *Chamberlin*, 343 Ark. 392, 36 S.W.3d 281. In that case, the insured, while a passenger in her husband's vehicle, was injured in a collision with an underinsured driver. At the time of the accident, the insured and her husband owned three separate insurance policies, one for each of their three vehicles, issued by the same insurer. The insurer paid UIM benefits on only one policy, rejecting claims on the other two policies because of owned–but–not–insured exclusions contained in each policy. The insured filed suit, and after the trial court granted summary judgment, the insured appealed to this court. We affirmed the grant of summary judgment, noting that we had considered and rejected the appellant's precise argument in *Clampit*. Although the insured argued that this court's position reflected a minority-jurisdiction position, this court held that it was bound to follow its prior law. In concluding that the anti-stacking provision was valid, the court noted that the policy language was clear and unambiguous and that the parties were free to contract as to the terms, as long as they were not violative of state law. Finally, the *Chamberlin* court noted: "Although aware of our judicial decisions . . . the legislature has not amended the governing statutes to permit stacking. . . . [T]he General Assembly's silence over 'a long period gives rise to an arguable inference of acquiescence or passive approval' to the court's construction of the statute." *Id.* at 398, 36 S.W.3d at 284 (quoting *Chapman v. Alexander*, 307 Ark. 87, 90, 817 S.W.2d 425, 427 (1991)).

Despite the clear pronouncements in both *Clampit* and *Chamberlin*, Appellant asks this court to deviate from its established position that anti-stacking provisions are not contrary to the public policy of this state. The distinction that those two cases involved owned–but–not–insured exclusions rather than another insurance clause is not a meaningful one. The gist of *Clampit* and *Chamberlin* is that an insurer may prohibit the stacking of multiple insurance policies if those policies unambiguously prohibit the stacking of benefits. Just as in the prior cases, at issue here are multiple policies insuring multiple vehicles, and each of those policies contained

clear and unambiguous language excluding the stacking of policies. If we were to disallow those exclusions, we would bind Appellees to a risk that was plainly excluded and for which Appellant did not pay. Accordingly, we find no merit to Appellant's argument that the trial court erred in determining that the anti-stacking provisions were not void as violative of public policy.

Affirmed.