[No. 49521-6-I.   Division One.   March 31, 2003.]

MARK R. HODGE, *Appellant*, v. LARRY RAAB, ET AL., *Respondents*.

*Martin D. Fox*, for appellant.

*Gary A. Trabolsi* and *Arthur D. Leritz*, for respondents.

Becker, C.J. — The question in this appeal is whether a service station policy, with liability coverage that excludes automobiles except for customers' cars that have been left for servicing, was subject to the statutory mandate for underinsured motorist coverage. We conclude it was not because the policy was not "issued with respect to" any designated automobile. The trial court correctly denied the claim of a garage employee injured inside the garage by an uninsured motorist.

Appellant Hodge worked as a mechanic at Larry Raab's Auburn Valley Chevron. While Hodge was working in the garage on a customer's truck, the customer reached inside his pickup truck to start the engine. The truck lurched forward, pinning Hodge to the workbench and crushing his legs.

The accident was attributable to the negligence of the customer, who had no liability insurance. At the time of the accident, Auburn Valley Chevron maintained a service station policy with Mutual of Enumclaw, including comprehensive general liability coverage. Mutual of Enumclaw did not offer underinsured motorist coverage when issuing the policy and did not obtain a written waiver of such coverage. Hodge filed a declaratory action in an effort to obtain underinsured motorist coverage under the Mutual of Enumclaw policy. The trial court granted Mutual of Enumclaw's motion for summary judgment, dismissing Hodge's action with prejudice. Hodge appeals.

We will affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] The legal question raised by this appeal is whether a policy that provides liability coverage for injury caused by garage

---

[1] CR 56(c).

operations, incidentally including injury caused by unspecified transient customer vehicles, is one that must also (in the absence of a waiver) include underinsured motorist (UIM) coverage.

The key policy provision Hodge relies on is Part III, "Liability Insurance." It provides liability coverage for damages arising from garage operations:

A. WE WILL PAY

1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from garage operations.[2]

For purposes of this section, employees are insured against liability as is the named insured, as long as they are acting within the scope of their duties (as Hodge undisputedly was).

There are 15 separate exclusions from this provision.[3] Of significance to Hodge's argument, exclusion 7 first states that there is no liability coverage for automobiles used in garage operations, but then narrows the exclusion by stating it does not apply to a customer's auto, such as the one that injured Hodge:

B. WE WILL NOT COVER—EXCLUSIONS.

This insurance does not apply to:

. . .

7. Any auto used in connection with garage operations. This

---

[2] Clerk's Papers at 26.

[3] Clerk's Papers at 26-27. At least four of the exclusions (Exclusions 2, 3, 4, and 5) are designed to make the liability coverage inapplicable to bodily injury suffered by an employee of the business. These employee exclusions are not relevant to our analysis. Hodge does not claim under the liability coverage. Rather, he argues that underinsured motorist coverage should be read into the policy and that he would be an eligible claimant as the victim of an underinsured motorist.

exclusion does not apply to one of your customers autos left with you for service or repair.[4]

The net result is that Auburn Valley Chevron does not have protection from liability for accidents that result from garage operations when an auto is involved—unless the auto in question was left there by a customer.

■■ Hodge contends the liability coverage for customers' cars brings the policy under the ambit of the underinsured motorist statute because it is a primary policy insuring against loss resulting from liability arising out of the use of a motor vehicle. Hodge summarizes his argument as follows:

> Mutual of Enumclaw's policy can be nothing but primary coverage for auto liability as there is no underlying insurance other than this policy. This policy specifically provides comprehensive auto liability coverage for customer's cars; the insured did not reject UIM coverage, therefore, Mutual of Enumclaw should be required to provide the coverage according to RCW 48.22.030.[5]

The statute provides:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued *with respect to any motor vehicle registered or principally garaged in this state* unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or

---

[4] Clerk's Papers at 26. An amendatory endorsement to section III.B.(7)—"Operation of Customers' Automobiles on Particular Premises"—restates, in slightly different terms, that the exclusion is inapplicable with respect to any customer's automobile while it is on the premises. Clerk's Papers at 32.

[5] Br. of Appellant at 13. Hodge's term "comprehensive auto liability policy" is inaccurate. The liability coverage provided for customers' cars is limited to periods when the car is left at the garage for service and repair.

motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy. The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.[6]

The statute requires an insurer to include (or obtain written rejection of) UIM coverage in any liability policy "issued with respect to any motor vehicle registered or principally garaged in this state."[7] The liability section in the policy issued by Mutual of Enumclaw was not issued "with respect to" a vehicle known to be registered or garaged in Washington. Rather, it was issued with respect to garage operations. It provided liability coverage for garage accidents, specifically excluding those caused by autos.

The policy does incidentally cover an accident caused by any customer vehicle, wherever registered or garaged, that was left at the garage for service or repair. But at the time the policy was issued, neither the service station owner nor the insurance company had any information about the vehicles that potentially would be covered. There is no reference in the liability coverage to covered autos. There is no schedule of covered autos and no premium attributable to the limited liability coverage for customers' cars. The absence of such features reinforces the conclusion that the policy was not issued with respect to a vehicle.

Because the policy was not issued with respect to a vehicle registered or principally garaged in Washington, the statutory mandate for underinsured motorist coverage does not apply. Accordingly, it makes no difference if—as Hodge argues—the liability coverage the policy does include for customers' cars is primary rather than excess. And it makes no difference that the particular vehicle that caused this particular accident was, in fact, registered and principally garaged in Washington.

---

[6] RCW 48.22.030 (emphasis added).

[7] RCW 48.22.030(2).

There are other policy provisions which, according to Hodge, trigger the statutory mandate for underinsured motorist coverage because they show that the policy provides auto liability coverage in a variety of situations. He mentions two in passing: a provision under "Part V—Garagekeepers Insurance" that covers "loss to a covered auto left in the insured's care,"[8] and a "Hired Cars Endorsement."[9] Because Hodge has made no attempt to demonstrate that the specific language in these provisions brings them under the underinsured motorist statute, we do not consider them.

While the UIM statute is to be read broadly, it does not mandate UIM coverage in connection with every type of liability policy that will, under limited circumstances, cover damage resulting from the use of automobiles. The danger of expanding the scope of required underinsured motorist coverage beyond what the statute requires is well stated by Appleman:

> It should be recognized that the generosity of the courts confers no favor upon the insuring public. Such decisions result either in such coverage being withdrawn from potential insureds or in premium rates being raised so substantially that they will become priced out of the range of most buyers.[10]

The issue in this case was not advanced without reasonable cause and we do not deem it frivolous. Respondents' request for attorney fees under RCW 4.84.185 is therefore denied.

Affirmed.

GROSSE and AGID, JJ., concur.

Reconsideration denied May 1, 2003.

Review granted at 150 Wn.2d 1018 (2003).

---

[8] Clerk's Papers at 27.

[9] Clerk's Papers at 42-43.

[10] 8C JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 5071.65 at 108 (1981).