# United States Court of Appeals
## For the First Circuit

No. 12-2370

PEERLESS INDEMNITY INSURANCE COMPANY;
PEERLESS INSURANCE COMPANY,

Plaintiffs, Appellees,

v.

ROBBIN W. FROST,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Robert H. Furbish, with whom Steven D. Silin and Berman & Simmons, P.A. were on brief, for appellant.
Carol I. Eisenberg, with whom John S. Whitman and Richardson, Whitman, Large, & Badger were on brief, for appellees.

July 10, 2013

**LIPEZ, Circuit Judge.** Dr. Robbin Frost, a licensed podiatrist, was driving alone in her husband's Pontiac Bonneville when she was severely injured in a collision caused by an underinsured motorist. So far, she has collected $250,000 in insurance proceeds; she seeks further payment from Peerless Indemnity Insurance Co. and Peerless Insurance Co. (together, "Peerless"), who issued business owner's and excess/umbrella policies to Frost's podiatric practice, Lake Region Family Foot and Ankle Center, P.A. ("Lake Region"). Peerless sued in federal district court for a declaratory judgment that it had no duty to pay for any of Frost's injuries or damages. The district court granted summary judgment in favor of Peerless. Frost appeals.

We affirm the district court's decision on the ground that Maine's uninsured/underinsured motorist statute, Me. Rev. Stat. tit. 24-A, § 2902, does not apply to the Peerless policies issued to Lake Region.

**I.**

On appeal from the district court's summary judgment order, we review the relevant facts in the light most favorable to the party against whom judgment was granted (here, Frost) and draw all reasonable inferences in her favor. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 110 (1st Cir. 2013). The facts here are drawn from the pleadings and statements submitted by Frost to the district court, as well as the undisputed documentary evidence.

## A.  The Accident

Frost is the sole stockholder and executive officer of Lake Region, a Maine professional association with a surgical practice office in Windham, Maine.  On May 25, 2007, Frost set out from Lake Region's office in Windham to the Mercy Hospital in Portland, where she was scheduled to perform several podiatric surgical procedures.  The car she was driving, a Pontiac Bonneville, was titled to her husband, but Frost was the primary user of the automobile and the vehicle registration showed both Frost and her husband as co-registrants.

While traveling east along Route 202, Frost brought the Pontiac to a stop at a traffic light in the town of Gray, Maine.  The driver of a second vehicle stopped behind her.  As Frost and the second driver waited at the traffic light, the driver of a third vehicle came from behind at an unsafe speed and failed to bring his vehicle to a halt, colliding with the second car and pushing it violently into the rear of the Pontiac Bonneville.

Frost suffered severe injuries as a result of the collision, including permanent disfigurement and near-total loss of her eyesight.  The injuries have forced Frost to discontinue her podiatric practice.  Frost has stated in her pleadings that her injuries and damages as a result of the collision are "well in excess" of $2.25 million.  Peerless concedes that Frost's injuries and damages are at least in excess of $1.25 million.

## B. The Insurance Policies

Frost and the driver of the second vehicle both sought to recover damages from the driver of the third vehicle, whose negligence appears to have been the sole proximate cause of the collision. The driver of the third vehicle was covered under an automobile insurance policy issued by AIU Insurance Co. ("AIU"). That policy provided coverage for bodily injury and property damage of up to a maximum of $125,000 per accident. Frost herself was covered under an automobile insurance policy issued by Progressive Northwestern Insurance Co. ("Progressive"), which provided uninsured/underinsured motorist coverage of up to a maximum of $250,000 per person.

AIU agreed to pay $99,745.98 to Frost in connection with the accident; this sum represented the full amount of coverage remaining under the negligent driver's liability policy after the second driver was compensated for his injuries. Meanwhile, Progressive agreed to pay Frost $150,254.02, which represented the maximum underinsured motorist coverage under the policy minus the amount Frost already had received from AIU.

Frost's podiatric practice, Lake Region, also had two insurance policies in effect at the time of the accident: a business owner's policy issued by Peerless Indemnity Insurance Co. and a commercial umbrella policy issued by Peerless Insurance Co. The business owner's policy provided coverage to Lake Region for

liability and medical expenses of up to $1 million per occurrence; the umbrella policy provided additional coverage for up to $1 million.

**1. Business Owner's Policy.**  The business owner's policy explicitly excluded liability coverage for "'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."  (An exception to that exclusion, however, effectively provided liability coverage for bodily injury or property damage arising out of valet parking on the business premises.)

Despite this explicit exclusion of automobile liability coverage, the business owner's policy was subject to an endorsement for "Hired Auto and Non-Owned Auto Liability," which applied to bodily injury and property damage arising out of the use of a "hired auto" or "non-owned auto" by an employee of Lake Region in the course of business.  The endorsement explicitly deleted the exclusion of automobile liability coverage "[f]or insurance provided by this endorsement only."

The endorsement included a section entitled "Who Is An Insured," which read, in relevant part:

> Each of the following is an insured under this
> endorsement to the extent set forth below:
>
> a.    You;

b.	Any other person using a "hired auto" with your permission;

c.	For a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business . . . .

None of the following is an insured:

. . .

(2)	Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household . . . .

The terms "hired auto" and "non-owned auto" were defined by the policy as follows:

"Hired Auto" means any "auto" you lease, hire, or borrow.  This does not include any "auto" you lease, hire, or borrow from any of your "employees" or members of their households, or from any partners or "executive officers" of yours.

"Non-Owned Auto" means any "auto" you do not own, lease, hire, or borrow which is used in connection with your business. . . .

**2.	Umbrella Policy.**	The umbrella policy likewise addressed automobile coverage.  According to the policy terms:

[W]ith respect to the "auto hazard":

a.	You are an insured;

b.	Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

(1)	The owner or anyone else from whom you hire or borrow an "auto". . . .

-6-

                    (2)  Your "employee" if the "auto" is
                         owned by that "employee" or a
                         member    of    his    or    her
                         household . . . .

The umbrella policy defined "auto hazard" to mean "liability
arising out of the ownership, maintenance, use or 'loading or
unloading' of any auto."  The policy also stated that:

        This insurance does not apply to:

        . . .

        f.       Motor Vehicle Laws and Coverages

                 Motor vehicle no-fault law, first party
                 physical   damage   coverage,   personal
                 injury protection coverage, uninsured
                 motorists  or  underinsured  motorists
                 law; or other laws or coverages similar
                 to any of the foregoing.

        When Frost demanded payment from Peerless under the
business owner's and umbrella policies for injuries and damages
that resulted from the May 25, 2007 collision, Peerless refused on
the ground that it had no obligation under either policy to pay
uninsured/underinsured motorist benefits to Frost with respect to
the accident.  Peerless then filed a declaratory judgment complaint
in federal district court in Maine, invoking the court's diversity
jurisdiction  under  28  U.S.C.  §  1332(a)  (2006).[1]    Frost
counterclaimed for judgment in the amount of $1 million against

_____

        [1] Peerless Indemnity Insurance Co. is organized under the laws
of Illinois, and Peerless Insurance Co. is organized under the laws
of New Hampshire.  Both corporations have their principal place of
business in Boston, Massachusetts.

                              -7-

Peerless Indemnity Insurance Co. pursuant to the business owner's policy and another $1 million against Peerless Insurance Co. pursuant to the umbrella policy. After Peerless and Frost filed cross-motions for summary judgment, the district court concluded that the "unambiguous" language of both Peerless policies excluded coverage for Frost's injuries and damages in the collision. The court entered judgment in favor of Peerless on all claims, and this timely appeal followed.

## II.

We review the grant of a motion for summary judgment <u>de novo</u>. <u>Cruz</u> v. <u>Bristol-Myers Squibb Co.</u>, 699 F.3d 563, 570 (1st Cir. 2012). Peerless argues that the terms of Lake Region's business owner's and umbrella policies explicitly exclude coverage for automobiles owned by Frost's family members. Frost concedes that the business owner's and umbrella policies exclude <u>liability</u> coverage with respect to automobiles owned by her family members, but she argues that under Maine law the Peerless policies must be deemed to provide uninsured/underinsured motorist coverage to Frost. Frost's argument is based on a Maine statute, Me. Rev. Stat. tit. 24-A, § 2902, and the Maine case law construing that statute.

## A.  Maine's Uninsured/Underinsured Motorist Statute

In 1967, the Maine Legislature first enacted a statute requiring automobile liability insurers to provide coverage in

their policies for injuries caused by uninsured tortfeasors.  See Connolly v. Royal Globe Ins. Co., 455 A.2d 932, 935 (Me. 1983) (citing Pub. L. No. 1967, ch. 93, § 1 (effective Jan. 1, 1968)). In 1975, the Legislature extended the mandatory coverage provision so that it would apply to victims injured by underinsured as well as uninsured drivers.  See id.  Since then, the Legislature has amended the statute several more times, most recently in 2005.  In its present form, the statute provides that:

> A policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may not be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided in the policy or supplemental to the policy for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

Me. Rev. Stat. tit. 24-A, § 2902(1) (2013).

The statute reflects "a strong public policy in favor of the just compensation of accident victims." Beal v. Allstate Ins. Co., 989 A.2d 733, 743 (Me. 2010) (quoting Wescott v. Allstate Ins., 397 A.2d 156, 167 (Me. 1979)) (internal quotation marks omitted).  The "obvious design" of the statute is "to protect a responsible insured motorist against the hazards presented by the operation of motor vehicles where injuries are inflicted in an

-9-

accident with an irresponsible operator who is . . . financially unable to furnish adequate compensation for the injuries caused in the accident."  Wescott, 397 A.2d at 166; see also Beal, 989 A.2d at 743 ("[T]he legislative purpose of section 2902 was to allow 'an injured insured the same recovery which would have been available . . . had the tortfeasor been insured to the same extent as the injured party.'" (second alteration in original) (emphasis omitted) (quoting Jipson v. Liberty Mut. Fire Ins. Co., 942 A.2d 1213, 1216 (Me. 2008))).

Under the statute, every automobile insurance policy in Maine must provide uninsured/underinsured motorist coverage of at least $50,000 for injury to or death of one person and $100,000 per accident for injury to or death of more than one person.  See Me. Rev. Stat. tit. 24-A, § 2902(2); id. tit. 29-A, § 1605(1)(C); see also Dairyland Ins. Co. v. Christensen, 740 A.2d 43, 44 n.1 (Me. 1999).  Stricter rules apply to automobile insurance policies "insuring a single individual or one or more related individuals resident in the same household, as named insured."  Me. Rev. Stat. tit. 24-A, § 2912(1).  These individual and household policies generally must provide uninsured/underinsured motorist coverage at least equal to "the amount of coverage for liability for bodily injury or death."  Id. § 2902(2).[2]  A purchaser of an individual or

_____

[2] For example, if an individual or household automobile insurance policy provides liability coverage of up to $1.5 million for bodily injury or death, then under Maine law it must also

-10-

household automobile insurance policy with liability coverage limits above the statutory minimum may choose to carry uninsured/underinsured motorist coverage with lower limits--but only if she signs a statutorily prescribed form and only if her resulting uninsured/underinsured motorist coverage is still at least $50,000 for injury or death of one person and $100,000 for injury or death of multiple persons.  See id.[3]

Maine's courts "construe the protections of section 2902 liberally in favor of insureds and strictly against insurers." Beal, 989 A.2d at 743.  The provisions of the uninsured/underinsured motorist statute control "even when not included in the insurance contract, and, to the extent that policy terms are repugnant to the express or implied requirements of the statute, they are void and unenforceable."  Wescott, 397 A.2d at 166.  Moreover, when an insured victim settles with an underinsured

provide uninsured/underinsured motorist coverage of up to $1.5 million for bodily injury or death--unless the purchaser has signed the statutorily prescribed form to elect lower levels of coverage. See Outram v. Onebeacon Ins. Grp. LLC, No. CV-06-319, 2007 Me. Super. LEXIS 206, at *7-8 (Me. Super. Ct. Oct. 5, 2007).

[3] Here, the business owner's and umbrella policies issued to Lake Region each provided liability coverage of up to $1 million, and Lake Region has not elected a lower level of uninsured/underinsured motorist coverage.  Thus, Frost argues, Peerless must provide $1 million of uninsured/underinsured motorist coverage.  Peerless counters that the business owner's and umbrella policies are not "individual" or "household" policies, so only the statutory minimums ($50,000 per person) apply.  We do not reach this issue because, as we explain below, we find that the uninsured/underinsured motorist statute does not apply to the Peerless policies.

tortfeasor for the limits of the tortfeasor's liability insurance, the victim may still claim underinsured motorist benefits under her own insurance policy if her damages exceed the tortfeasor's policy limits, provided that (1) her insurance carrier has consented to the settlement or (2) there is "no prejudice" to her carrier resulting from its lack of consent. Beal, 989 A.2d at 743-44. Here, Peerless consented to Frost's settlement with AIU and her settlement with Progressive.

## B. Application to the Peerless Policies

At issue in this case is whether Lake Region's Peerless policies count as "polic[ies] insuring against liability arising out of the ownership, maintenance or use of any motor vehicle . . . with respect to any such vehicle registered or principally garaged in this State" for the purposes of Maine's uninsured/underinsured motorist statute. Me. Rev. Stat. tit. 24-A, § 2902(1). Since the umbrella policy is parasitic on the underlying business owner's policy, whether the umbrella policy is covered by the statute depends on whether the business owner's policy is. For the following reasons, we conclude that the business owner's policy is not covered by the statute.[4]

---

[4] At the summary judgment stage, the district court "assum[ed] (without deciding)" that Maine's section 2902 would in some circumstances apply to "policies that do not insure or reference any particular motor vehicle registered or principally garaged in Maine." Peerless Indem. Ins. Co. v. Frost, No. 2:12-cv-43-GZS, 2012 U.S. Dist. LEXIS 148518, at *16 (Oct. 16, 2012). The district court nevertheless ruled in Peerless's favor. Id. at *17. We

-12-

The issue in this case is one of Maine law. The Maine Law Court has never definitively ruled on whether Maine's uninsured/underinsured motorist statute applies to policies such as those Peerless issued to Lake Region. When a state's highest court has yet to rule definitively on a question of state law, our task is to predict how that court likely would decide the issue. Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 98 (1st Cir. 2011).

"In carrying out that task, our first step is to consult pertinent statutory language . . . ." González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009). On its face, Maine's uninsured/underinsured motorist statute applies to "polic[ies] insuring against liability arising out of the ownership, maintenance or use of any motor vehicle . . . with respect to any such vehicle registered or principally garaged in this State." Me. Rev. Stat. tit. 24-A, § 2902(1). Given that the business owner's policy includes the Hired Auto and Non-Owned Auto Liability endorsement, that policy might theoretically be read as "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle." But the statute goes on to limit its applicability to policies issued "with respect to any such vehicle registered or principally garaged in

_____

affirm the district court's ultimate ruling, but do so by foreclosing that threshold assumption: We hold that Maine's section 2902 does not apply to the Peerless policies issued to Lake Region.

this State." Id. The statute, in other words, applies to insurance policies issued for specific motor vehicles. The business owner's policy, however, was not issued "with respect to" any vehicle whatsoever--it was issued with respect to the business of Lake Region.

Frost argues that the phrase "with respect to any such vehicle registered or principally garaged in this State" is intended simply to describe the limits of state authority to regulate insurance policies--not to confine the reach of the statute to particular types of policies. Frost offers no support for that assertion, but even if she is correct, her reading does not alter the meaning of the limiting phrase. The statute is worded as a conditional prohibition on the delivery and issuance of insurance policies. Me. Rev. Stat. tit. 24-A, § 2902(1) ("A policy . . . may not be delivered or issued . . . , unless [certain conditions are met] . . . ."). The phrase "with respect to" circumscribes that conditional prohibition, limiting it to "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle . . . registered or principally garaged in this State." Id. Whatever the purpose of the "with respect to" language (and it seems likely that it is intended, in part, to delimit the state's authority), that language still describes an insurance policy issued for specific vehicles.

That the uninsured/underinsured motorist statute applies to insurance policies issued for specific motor vehicles is further supported by the next subsection of the statute, which establishes the <u>amount</u> of uninsured/underinsured motorist coverage that must be provided.  <u>See</u> <u>id.</u> § 2902(2).  In setting out the requirements, this section divides the universe of policies covered by the uninsured/underinsured motorist statute between "<u>motor vehicle insurance policies</u> subject to [other sections of the Maine Insurance Code]" and "<u>motor vehicle insurance</u> policies <u>not</u> subject to [those other sections]."  <u>Id.</u> (emphases added).  In other words, the statute itself contemplates that it will apply only to "motor vehicle insurance policies."  Even if the business owner's policy might theoretically be characterized as "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle," it is difficult to characterize the business owner's policy as a "motor vehicle insurance policy."

In predicting how the Maine Law Court would decide this issue, we also look to analogous decisions of that court.  <u>See</u> <u>Barton</u> v. <u>Clancy</u>, 632 F.3d 9, 17 (1st Cir. 2011).  Though the Law Court has never explicitly deemed the uninsured/underinsured motorist statute inapplicable outside the context of motor vehicle insurance policies, the court has repeatedly employed language to that effect.  <u>E.g.</u>, <u>Molleur</u> v. <u>Dairyland Ins. Co.</u>, 942 A.2d 1197, 1200 (Me. 2008) ("The Legislature requires that any <u>motor vehicle</u>

-15-

policy written in Maine provide UM/UIM coverage." (emphasis added)); Connolly, 455 A.2d at 935 ("In 1967, the Legislature originally enacted the uninsured vehicle coverage to require automobile liability insurers to provide uninsured vehicle coverage in the policies." (emphasis added)); Dufour v. Metro. Prop. & Liab. Ins. Co., 438 A.2d 1290, 1291-92 (Me. 1982) ("24-A M.R.S.A. § 2902 (1980) . . . provides that any automobile liability insurance policy delivered in Maine and covering an automobile registered or principally garaged in Maine must include uninsured motorist coverage . . . ." (emphasis added)); Langley v. Home Indem. Co., 272 A.2d 740, 744 (Me. 1971) (stating that UM statute applies to "automobile liability insurance contract[s]").

Furthermore, we may consult decisions of the state's lower courts, even those that express "considered dicta." Rosciti, 659 F.3d at 98; see also DiBella v. Hopkins, 403 F.3d 102, 113 (2d Cir. 2005) (statements by state's lower courts, even if dicta, can be "helpful indicators of state law"). A Maine trial court has suggested in dicta that an "umbrella policy would not constitute a policy 'with respect to [a] vehicle registered or principally [garaged] in this State' within the meaning of [section] 2902(1)." Outram v. Onebeacon Ins. Grp. LLC, No. CV-06-319, 2007 Me. Super. LEXIS 206, at *6 n.3 (Me. Super. Ct. Oct. 5, 2007) (first alteration in original).

Moreover, we "may consider . . . any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." Michelin Tires (Can.) Ltd. v. First Nat. Bank of Bos., 666 F.2d 673, 682 (1st Cir. 1981) (citations and internal quotation marks omitted). Several pieces of legislative history reinforce the understanding that the statute applies only to motor vehicle policies. See, e.g., Letter from Alessandro A. Iuppa, Superintendent, State of Me. Dep't of Prof'l & Fin. Reg., Bureau of Ins., to Sen. Lloyd LaFountain, Rep. Jane Saxl & Joint Standing Comm. on Banking & Ins. 1 (Apr. 12, 1999) ("Current law . . . requires every motor vehicle policy issued in this state to include uninsured and underinsured motor vehicle coverage." (emphasis added)); H.R. 122-L.D. 2021, 2d Sess., at H-1354 (Me. 2006) (statement of Rep. Lisa Marraché) ("The intent of the [uninsured/underinsured motorist] law when it was first passed was for car insurance for the person who was driving or those who were in the car and not necessarily other people to make claims against their own car insurance . . . ." (emphasis added)).

Additionally, we consider how other state courts have resolved the question. See Rosciti, 659 F.3d at 98. Courts in other states have held that uninsured/underinsured motorist statutes with language similar to Maine's do not apply to commercial general liability policies such as those at issue here. See, e.g., Trinity Universal Ins. Co. v. Metzger, 360 So.2d 960,

-17-

962 (Ala. 1978) (similarly worded Alabama statute applies only to policies that "insure against the risk of loss through the operation of specific automobiles"). One useful example is <u>Hodge v. Raab</u>, 65 P.3d 679 (Wash. Ct. App. 2003). Hodge, an employee at an auto garage, was working on a customer's truck when, through the customer's fault, the truck lurched forward, injuring Hodge. <u>Id.</u> at 680. The customer had no liability insurance. <u>Id.</u> Hodge's employer maintained a commercial general liability policy for injury caused by garage operations, incidentally including injury caused by unspecified customer vehicles. <u>Id.</u> at 680, 682. Hodge argued that this liability coverage for customers' cars brought the policy within the ambit of Washington's uninsured/underinsured motorist statute. <u>Id.</u> at 681. The court rejected that argument, explaining:

> The liability section in the policy . . . was not issued "with respect to" a vehicle known to be registered or garaged in Washington. Rather, it was issued with respect to garage operations. It provided liability coverage for garage accidents, specifically excluding those caused by autos.
> The policy does incidentally cover an accident caused by any customer vehicle, wherever registered or garaged, that was left at the garage for service or repair. But at the time the policy was issued, neither the service station owner nor the insurance company had any information about the vehicles that potentially would be covered. There is no reference in the liability coverage to covered autos. There is no schedule of covered autos and no premium attributable to the limited liability coverage for customers' cars. The absence of such features reinforces

> the conclusion that the policy was not issued with respect to a vehicle.
>
> Because the policy was not issued with respect to a vehicle registered or principally garaged in Washington, the statutory mandate for underinsured motorist coverage does not apply. . . .  And it makes no difference that the particular vehicle that caused this particular accident was, in fact, registered and principally garaged in Washington.
>
> . . . .
>
> While the UIM statute is to be read broadly, it does not mandate UIM coverage in connection with every type of liability policy that will, under limited circumstances, cover damage resulting from the use of automobiles.

Id. at 681-82.

Frost attempts to distinguish Hodge.  She argues that the policy in Hodge--which "provided liability coverage for garage accidents, specifically excluding those caused by autos," subject to an exception for accidents caused by "any customer vehicle," id. at 682--"obviously provides significantly narrower coverage for autos than the [business owner's policy] with the Hired Auto and Non-Owned Auto Liability endorsement."  It is far from obvious to us, however, that the sliver of auto insurance in Hodge was narrower than the sliver of auto insurance in the business owner's policy here.  Indeed, Frost overstates the amount of auto insurance bound up in Lake Region's business owner's policy.  She argues, erroneously, that the policy's initial explicit exclusion of auto liability coverage "is completely removed and replaced by the 'Hired Auto and Non-Owned Auto Liability' endorsement."  In fact, by its own terms, as already noted, the endorsement deletes that

-19-

exclusion "[f]or insurance provided by this endorsement only" (emphasis added).  Outside of the narrow context of hired and non-owned autos, the exclusion of auto liability coverage retains full force, reinforcing the notion that the business owner's policy is not the type of auto policy to which the Maine statute applies.

There are cases from other states, however, in which commercial general liability policies similar to the business owner's policy, containing similar auto liability endorsements, were held subject to those states' uninsured/underinsured motorist statutes.  For instance, Illinois's intermediate appellate court has held that the state's uninsured/underinsured motorist statute--which is worded similarly to Maine's--applies to commercial general liability policies that, like the business owner's policy issued to Lake Region, include hired and non-owned auto liability endorsements.  Harrington v. Am. Family Mut. Ins. Co., 773 N.E.2d 98, 100 (Ill. App. Ct. 2002) (sole proprietor of landscaping business who was injured by underinsured motorist while riding his bicycle can claim underinsured motorist benefits from his commercial general liability insurer); see also W. Bend Mut. v. Keaton, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001); Selander v. Erie Ins. Grp., 709 N.E.2d 1161 (Ohio 1999).[5]

---

[5] Frost also cites St. Paul Fire & Marine Insurance Co. v. Gilmore, 812 P.2d 977 (Ariz. 1991).  This case is distinguishable, however, because there the insurer conceded that the relevant policy provided "automobile liability insurance."  Id. at 981.

-20-

The courts that decided these cases were willing to interpret broadly language similar to "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle . . . with respect to any such vehicle registered or principally garaged in this State." But in our opinion, such interpretations do violence to the plain meaning of the text. And we find it notable that, after the Ohio Supreme Court decided Selander, the Ohio Legislature amended its uninsured/underinsured motorist statute to preclude its application to commercial general liability policies such as those at issue in Selander and here. See Bowling v. St. Paul Fire & Marine Ins. Co., 776 N.E.2d 1175, 1177, 1179 (Ohio Ct. App. 2002) (stating that Selander was superseded by statute). This amendment suggests that the Ohio Legislature appreciated the negative policy consequences of interpreting an uninsured/underinsured motorist statute unduly broadly. Indeed, "'[i]t should be recognized that the generosity of the courts confers no favor upon the insuring public. Such decisions result either in such coverage being withdrawn from potential insureds or in premium rates being raised so substantially that they will become priced out of the range of most buyers.'" Hodge, 65 P.3d at 682 (quoting 8C J. Appleman, Insurance Law and Practice § 5071.65, at 108 (1981)).

Frost argues that not applying the uninsured/underinsured motorist statute to the Peerless policies is at odds with Maine's

-21-

clearly articulated public policy of providing broad uninsured/underinsured motorist coverage. See, e.g., Greenvall v. Me. Mut. Fire Ins. Co., 715 A.2d 949, 952 (Me. 1998) ("To effectuate [its] intent, we construe section 2902 liberally in favor of the insured victim and strictly against the insurer. Any ambiguity in the phrase 'legally entitled to recover' must be construed in favor of the insured." (citations and internal quotation marks omitted)). Indeed, Maine adheres to the rule that "[u]ninsured and underinsured insurance . . . is personal and portable, following the insured, rather than the vehicle." 16 Williston on Contracts § 49:35 (4th ed. 2013); see also Pease v. State Farm Mut. Auto. Ins. Co., 931 A.2d 1072, 1077 (Me. 2007) (Silver, J., concurring) ("UM coverage inures to the person, not the vehicle. . . . Maine precedent has ensured that UM coverage extends to pedestrians, bicyclists, and other insured who are injured while not in their owned-insured vehicle. Construing the UM statute broadly to prohibit . . . exclusions follows the legislative intent to close coverage gaps rather than endorse patchwork policies that leave responsible, insured consumers without the protection they have paid for." (citations and internal quotation marks omitted)); Skidgell v. Universal Underwriters Ins. Co., 697 A.2d 831, 834 (Me. 1997) (allowing passenger on another's motorcycle to claim benefits under uninsured/underinsured motorist coverage of passenger's own

automobile policy, and reasoning that limitations on scope of uninsured motorist coverage in insurance policy were "contrary to the public policy embodied in [section] 2902").

Frost is correct to note that the Maine Law Court has expressed a general unwillingness to allow insurers to circumscribe uninsured/underinsured motorist coverage. But Frost overlooks the fact that the decisions reflecting this unwillingness involve automobile liability policies that either explicitly provide uninsured/underinsured motorist coverage or are subject to the uninsured/underinsured motorist statute. See, e.g., Pease, 931 A.2d at 1074 ("State Farm's UM coverage policy loosely tracks the language of the uninsured motorist statute . . . ."); Greenvall, 715 A.2d at 951 ("At the time of accident, Madore was insured under an automobile liability policy issued by Maine Mutual which provided Madore with $300,000 of uninsured motorist coverage."); Skidgell, 697 A.2d at 832 ("Skidgell carried personal automobile insurance . . . providing underinsured motorist coverage up to $20,000."). Those decisions do not bear on the threshold question of whether the uninsured/underinsured motorist statute applies in the first place to commercial general liability policies containing a sliver of automobile liability coverage.

In addition, Frost also overlooks the fact that the rationale underlying the well-established owned-but-not-insured exception to the broad, portable nature of uninsured/underinsured

-23-

motorist coverage confirms that the uninsured/underinsured motorist statute should not apply in this case.  Under the owned-but-not-ensured exception, a person who owns multiple vehicles but only purchases automobile liability insurance on some of those vehicles cannot rely on section 2902 to confer uninsured/underinsured motorist coverage with respect to injuries sustained while riding in the owned-but-not-insured vehicles.  See Hare v. Lumbermens Mut. Cas. Co., 471 A.2d 1041, 1043 (Me. 1984) ("[U]ninsured motorist coverage on one of a number of vehicles owned by an insured does not extend the benefits of such coverage, for no premium, to all other vehicles owned by that insured."); see also Gross v. Green Mountain Ins. Co., 506 A.2d 1139, 1142 (Me. 1986); Brackett v. Middlesex Ins. Co., 486 A.2d 1188, 1191 (Me. 1985).  As courts elsewhere have noted, the owned-but-not-insured exception avoids "'the inequity of allowing a person who insures one vehicle with an insurance carrier to obtain a "free ride" by thereby obtaining coverage by that same carrier on one, two, or a fleet of vehicles upon which he has paid no premium to the carrier.'"  Nationwide Mut. Ins. Co. v. Hampton, 935 F.2d 578, 586-87 (3d Cir. 1991) (quoting Dullenty v. Rocky Mountain Fire & Cas. Co., 721 P.2d 198, 204 (Idaho 1986), abrogated by Colonial Penn Franklin Ins. Co. v. Welch, 811 P.2d 838 (Idaho 1991)).  Moreover, if the uninsured/underinsured motorist statute provided coverage for persons injured while riding in cars that they owned but that they

excluded from their insurance policies, then "multi-car owners would be acquiring insurance at rates subsidized by single-car owners," a result that some courts have found to be "neither desirable nor compatible with public policy."  Clampit v. State Farm Mut. Auto. Ins. Co., 828 S.W.2d 593, 597 (Ark. 1992); see also Lefler v. General Cas. Co. of Wis., 260 F.3d 942, 945 (8th Cir. 2001) ("'If an insurer is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous type of vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.'"  (quoting Dessel v. Farm & City Ins. Co., 494 N.W.2d 662, 664 (Iowa 1993))).

The rationale underlying the owned-but-not-insured exception--that it would be unfair for a person insured with respect to one or more vehicles to claim uninsured/underinsured motorist coverage for a vehicle he owns that is not identified and for which no premium has been paid--applies with full force to this case.  Through Lake Region (an entity that Frost wholly owns and completely controls), she purchased liability coverage for borrowed automobiles but not for automobiles owned by herself and her family members.  As noted, Frost concedes that the business owner's policy is limited in that way.  Now, she seeks to claim uninsured/underinsured motorist benefits with respect to her

husband's Pontiac Bonneville despite the fact that no premium has been paid for the coverage of that vehicle.

In summary, given the legislative text, structure, history, and policy, as well as relevant case law from both within and without Maine, we predict that the Maine Law Court would hold that section 2902 does not apply to the Peerless policies at issue in this case.

### III.

For the reasons stated, the Maine uninsured/underinsured motorist statute does not apply to the business owner's and umbrella policies issued by Peerless to Lake Region, precluding Frost's recovery from Peerless. Therefore, the district court properly issued a declaratory judgment that Peerless had no duty under either policy to pay Frost for the injuries and damages that she suffered in the May 25, 2007 accident.

Affirmed.